# SUPREME COURT.

## THE PEOPLE *ex rel.* EDWARD BOYLE agt. THE TRUSTEES OF THE VILLAGE OF EDGEWATER.

*Tax levy expenses for village purposes — contracts made for work — presumption, contract made in reference to the amount of the tax.*

Where the legislature authorize village trustees to raise in their tax levy bill $40,000, for their current expenses during that year, and the next year authorize them to raise for the same purpose not exceeding $25,000 for that year, a contract made with the trustees for services during the former year is presumed to have been made with reference to the amount of the tax to be raised in that year.

Where such services were performed during the year the contract was made, but the claim was not ripened into a judgment against the village until the next year, when payment was demanded, the trustees could not refuse such payment on the ground that they had no funds in consequence of a reduction that year in the tax levy.

The restriction upon the tax levy in the latter year could not apply to contracts made in the former year.

A mandamus is the proper remedy to compel the trustees to pay the judgment.

*Second Department, Brooklyn General Term, May,* 1876.

THE relator was employed in 1871 by the respondents to survey certain streets in the village of Edgewater. He received warrants or orders on the city treasury, but the warrants not being paid by the treasury, and payments for his services having been refused, he brought an action and recovered judgment in the sum of $937. Execution was issued, but the sheriff was unable to find any goods of respondents which could be seized by him.

At the time relator was employed to do his work the village was authorized by an act of the legislature to raise in

their annual tax levy and expend for village purposes the sum of $40,000. In June, 1872, however, the legislature enacted that thereafter the village could raise for current expenses the sum of $25,000 only.

The relator moved for a peremptory writ of mandamus to compel the respondents to raise money sufficient to pay the judgment.

*Charles W. West & Elliot Sandford,* counsel for relator.

I. The trustees should be compelled to appropriate and set aside sufficient to pay this claim and levy the same under their regular annual tax levy. By the charter of the village of Edgewater (*title XII, sec.* 1) "the board of trustees shall have power to raise annually by taxation such sum of money as they shall deem proper * * * to carry into effect all the several powers and privileges granted and conferred by this act, and they shall * * * on or before the first day of July in each year * * * determine what sum shall be raised by tax for the current year." By section 7, title XIII, the trustees are required to make a formal budget or appropriation of the moneys so to be raised, which, when so appropriated, shall be used for no other purpose whatever. The words "as they shall deem proper," in title XII, section 1, do not give the trustees power to include the claim in the tax levy or not, as they see fit, and preclude the court from ordering them so to do. The vouchers and the judgment of the supreme court against the village thereon are conclusive evidence that this claim is a just and a legal one, and that it long has been and now is the duty of the trustees to pay it (*State* agt. *Supervisors, &c.,* 20 *Wis.,* 79). In such case, as the courts have uniformly held, the trustees cannot refuse to pay on the ground that they have a discretion to levy the necessary tax or not. The principle is well stated in 2 *Dillon on Municipal Corp.* (*sec.* 669, *and cases*) : "But if the inferior tribunal, body, officer or agent refuse to act in cases where the law

requires them to act, and the party has no other legal remedy, and when in justice there ought to be one, a mandamus will lie to set them in motion to compel action. *Dillon on Municipal Corp.* (*vol.* 2, *sec.* 686) says: "When judgment is obtained and there is no property subject to execution out of which it can be made, mandamus will lie and is the proper remedy to compel the levy and collection of the necessary tax to pay the judgment. When the claim is reduced to judgment the duty to provide for its payment becomes perfect, and if it can be paid in no other way it must be done by the levy and collection of a tax for that purpose, and this duty will be enforced by mandamus."

This judgment is a debt of record against the village, is founded on its promises to pay issued in 1871, has stood unsatisfied on the docket since July 18, 1872, and is, I submit, a more binding claim on the moneys to be raised by the regular tax than simple contract debts incurred by the village during the current year.

II. The act (*chap.* 879, *p.* 1872) restricting the village trustees from raising more than $25,000 by annual tax, is, as to relator, unconstitutional and void, and the court should order said trustees to levy an additional amount in excess of such tax sufficient to pay relator's judgment.

The original act incorporating the village of Edgewater (*chap.* 214, *p.* 1866) gave the trustees thereof power to raise annually by taxation $40,000 to carry out the purposes of the act (*title X, sec.* 1). This act was amended in 1867 (*chap.* 517, *p.* 1867), but the provision giving the trustees power to raise $40,000 per year was untouched.

The act was further amended in 1870 (*chap.* 674, *p.* 1870) by an act "to amend, consolidate and re-enact" the former acts. Under this the trustees still had power to raise by annual taxation $40,000.

Then came chapter 879, page 1872, again amending the village charter, and by this act the trustees were not allowed to raise more than $25,000 by annual taxation (*sec.* 9).

People *ex rel.* Boyle agt. Trustees of the Village of Edgewater.

This last act was passed June 8, 1872. The judgment which relator asks that respondents be compelled to pay was obtained on July 18, 1872, on village warrants issued in August and November, 1871. The relator claims that this last act is as to him unconstitutional and void, and that the trustees should be ordered to levy for the benefit of relator a tax in excess of said $25,000, and if necessary up to $40,000, to pay his judgment.

The United States constitution declares (*art.* 1, *sec.* 10) that " no state shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts."

These vouchers were issued in August and November, 1871, under a law authorizing the trustees to raise annually $40,000 as a fund from which they were to be paid, and the law decreasing that sum to $25,000 per year (every cent of which the trustees swear is absolutely necessary to pay annual and current expenses, thus leaving relator nothing) is within the above prohibition and void.

The United States constitution is, on this point, the supreme law, and the decisions of its courts thereon conclusive authority (*Fletcher* agt. *Peck*, 6 *Cranch*, 87, *per* C. J. MARSHALL ; *Lesley* agt. *Phipps, Am. Law Register, April,* 1874, *p.* 238). Let us examine a few of them. *Van Hoffman* agt. *City of Quincy* (4 *Wallace*, 550) was a case where the city of Quincy had issued to relator and others bonds, under an act of the legislature, whereby the city was authorized to raise by annual tax sufficient to pay the interest thereon. The city failed to pay said interest when due, and refused to levy sufficient tax to pay it. The relator sued the city and got judgment. Execution was issued and returned unsatisfied. Relator prayed that city be compelled to levy sufficient tax to pay him. The return of the city to the alternative writ, set up, that the prior act authorizing a tax to pay said interest had been repealed, and alleged that the tax which it was authorized for the year would not be sufficient to pay its current expenses for the year and its debts.

This case seems to me to be on all fours with the present.

The supreme court held, reviewing all the cases, that the repealing act was unconstitutional as impairing the obligation of contracts, and void, saying :

" It is also settled that the laws which subsist at the time and place of the making of the contract and when it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement. Nothing can be more material to the obligation than the means of enforcement." Without the remedy, the contract may indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties, which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable and both are parts of the obligation which is guaranteed by the constitution against invasion. * * * The prohibition has no reference to the degree of impairment ; the largest and least are alike forbidden."

" It is well settled that a state may disable itself from exercising its taxing power in particular cases. It is equally clear that when a state has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements " (in the present case the judgment against the village is conclusive evidence of this) " the power thus given cannot be withdrawn until the contract is satisfied. The state and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute, and neither the state nor the corporation can any more impair the obligation of the contract in this way than in any other (*People* agt. *Bell*, 10 *Cal.*, 570 ; *Dominie* agt. *Sayre*, 3 *Sand.*, 555).

*Planters' Bank* agt. *Sharp* (6 *How.* [ *U. S.*], 327), says : One of the tests that a contract has been impaired is, that

its value has, by legislation, been diminished. It is not by the constitution to be impaired at all. This is not a question of degree or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.

It makes no difference whether the contract is executory or executed (*Fletcher* agt. *Peck*, 6 *Cranch*, 137).

*McCracken* agt. *Hayward* (2 *How.* [*U. S.*], 612) says: The obligation of a contract consists in its binding force on the party who makes it. This depends on the law in existence when it was made. These are necessarily referred to in all contracts as forming a part of them, as the measure of the obligation to perform them by the one party and the right acquired by the other. * * * If any subsequent law affects to diminish the duty or impair the right it necessarily bears on the obligation of the contract in favor of one party to the injury of the other, hence any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution.

The ideas of the validity of a contract and of the remedy to enforce it are inseparable, and both are parts of the obligation which is guaranteed by the constitution against invasion. Accordingly, whenever a statute in modifying any remedies to enforce a contract, does so in a way to impair substantial rights, the attempted modification is within the prohibition of the constitution and void (*White* agt. *Hart*, 13 *Wall.*, 647, *Dec.* 1871; *approving Von Hoffman* agt. *City of Quincy, supra*; *Gunn* agt. *Barry*, 15 *Wall.*, 611, *Dec.* 1872; *see also Rees* agt. *City of Watertown*, *U. S. Sup. Ct.*, *Oct. Term*, 1873; *reported in Albany Law Journal*, *May 30th*, 1874, *p.* 354, 355; *also Lasly* agt. *Phipps*, *Sup. Ct. Mississippi*, *reported in American Law Register*, *April 1874, p.* 236, *which is based on the decisions of the U. S. Supreme Court, and reviews them at length*). What say the New York cases? Remedies to enforce contracts are within the power of the legislature. The contracts themselves are

not. The legislature cannot by acting on the remedy impair the obligation of the contract (*People* agt. *Draper*, 15 *N. Y.*, 563, *citing cases*). *Morse* agt. *Goald* (11 *N. Y.*, 287), says: "But it is admitted that a contract may be virtually impaired by a law which, without acting directly upon its terms, destroys the remedy or so embarrasses it, that the rights of the creditor, under the legal remedies existing when the contract was made are substantially defeated. With this necessary qualification the jurisdiction of the states over the legal proceedings of their courts is supreme" (*Berley* agt. *Rampacher*, 5 *Duer*, 183.) The provisions of the laws of 1865, that until moneys necessary for the payment of any judgment against the city of New York, shall have been raised by taxation, no execution shall issue on the judgment, is unconstitutional as applied to judgments on contracts made before the act took effect (*Hadfield* agt. *Mayor*, 2 *Abbott* [*N. S.*], 95). In the *Brooklyn Park Commissioners* agt. *Armstrong* (45 *N. Y.*, 234), the city of Brooklyn was by an act of the legislature, authorized to take lands for a public park, and to issue bonds for the payment for such lands, the lands taken being pledged for the payment of said bonds. Subsequently an act was passed authorizing the sale of a portion of such lands, free from the lien of the bonds. The court (FOLGER, *J.*) says (*p.* 247): "True the entire contract is not destroyed. The liability to pay them remains. But the pledge of tangible property as a security that the liability should be met, has been withdrawn. It was on the assurance that this should remain that the creditor was induced to take the bonds, and give in exchange his property. This was a contract. The security cannot now be taken away without impairing the obligation of that contract." The second act was therefore held unconstitutional (*See also Quackenbush* agt. *Danks*, 1 *Denio*, 128; *Wynheimer* agt. *People*, 13 *N. Y.*, 421; *Berley* agt. *Rampacher*, 5 *Duer*, 183).

*Dillon on Municipal Corporations* (2d ed., 1873, *vol.* 1, *sec.* 41), says, citing many cases, if a municipal corporation

however becomes indebted, the rights of the creditors cannot it is clear, be impaired by any subsequent legislative enactment (*See to same effect* 1 *Kent Com.*, *pp.* 413, 424).

III. But if this act of 1872, reducing the tax levy to $25,000, is, as to relator, constitutional and valid, it does not prohibit the trustees from levying for relator's benefit, a tax in excess of $25,000, and if necessary up to $40,000, but on the contrary gives them express power to do so.

Relator's claim accrued when the trustees had power to raise annually $40,000. The law reducing that amount to $25,000 will not be construed retrospectively as to relator.

*Dash* agt. *Van Kleeck* (7 *John.*, 477) was an action against a sheriff for the escape of a prisoner on gaol liberties, under the act of March 30th, 1801. The prisoner was recaptured before the suit against the sheriff was commenced. Defendant set up the act of 1810, which provided that nothing contained in the act of March 20, 1801, shall be construed to prevent the sheriff from setting up in defense the recapture of the prisoner, as at common law. The court held (*see opinion* THOMPSON, *J.*, *p.* 493, *and* KENT, *Ch. J.*, *p.* 500), that the act of April fifth was no defense, and that the sheriff could not use it and plead the recapture of the prisoner. That an act of the legislature is not to be construed to operate retrospectively so as to take away a vested right. It is a principle of universal jurisprudence, that laws civil or criminal must be prospective and cannot have a retrospective effect.

*Berley* agt. *Rampacher* (5 *Duer*, 188) says: " The leading and much debated case of *Dash* agt. *Van Kleeck*, qualified and explained by subsequent decisions, has established the rule that no enactment, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action or suits, unless the intention that it shall so operate is expressly declared. Although the words of the statute are so general and broad as in their literal extent to comprehend existing cases, they must not be construed as appli-

cable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed."

This case decided that the act of 1853, exempting the husband from his common-law liability for the debts of his wife, was not retroactive as affecting the vested rights of creditors. That if construed as retroactive, it was unconstitutional and void (*See, also, Trist* agt. *Cabmas,* 18 *Abb.,* 143; *Main* agt. *Green,* 32 *Barb.,* 457; *Van Rensselaer* agt. *Secor, id.,* 473).

There is no such plain and unequivocal intention in the statute affecting this case (*See title XII, sec.* 1, *chap.* 674, *L.* 1870, *and sec.* 9, *chap.* 879, *L.* 1872). On the contrary, the charter declares (*title XV, sec.* 14) that "this act shall be construed favorably for every beneficial purpose therein mentioned or contained."

IV. The relator is utterly without a remedy unless a mandamus issue to these trustees. As under the cases of *Darlington* agt. *Mayor* (31 *N. Y.,* 164), and *Brinkerhoff* agt. *Board of Education* (6 *Abbott* [*N. S.*], 428), he can issue no execution which will fasten upon the corporate property of the village, and unless the court orders a tax for his benefit he is powerless. It is respectfully submitted, that under the foregoing decisions the court has such power and should exercise it; but that if it is decided that mandamus should not lie, that no costs be awarded to respondents and against the relator.

*Theodore Frean,* for respondent.

*By the Court,* PRATT, *J.* — At the time the respondent incurred the obligation stated the trustees had power to levy, by tax, $40,000. The relator must be presumed to have contracted with reference to that power, and relied upon it as a means of receiving his pay. In my judgment the trustees have power to raise, by tax, such sum as is necessary to pay debts contracted by the village prior to June 9th, 1872, not exceeding $40,000.

That the restriction confining the amount to $25,000 cannot be held to apply to debts contracted prior to June, 1872.